OPINION
{¶ 1} Frank Vitek appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment on his cross-claim against Thomas Laneve.
 {¶ 2} Vitek and Laneve were the sole members of a limited liability corporation known as Direct Reimbursement Administrative Services ("DRAS"), which processed dental insurance claims. Laneve owned a 52% share in DRAS, and Vitek owned a 48% share. In January 2002, Laneve caused DRAS to file a complaint for judicial dissolution of the company, with Laneve as the receiver. The complaint listed Laneve and Vitek as defendants.
 {¶ 3} Vitek filed an answer and a cross-claim against Laneve for breach of his fiduciary duty to a minority member. In September 2002, the parties reached a settlement agreement over the distribution of DRAS's assets. The settlement was presented to the trial court, but no mention was made of the cross-claim. When the trial court adopted the settlement in November 2002, it dismissed the cross-claim as moot. Vitek filed an appeal from the order dismissing his cross-claim. In Direct Reimbursement Admin.Serv., Ltd. v. Vitek, Montgomery App. No. 19679, 2003-Ohio-6235, we held that the trial court had erred in sua sponte dismissing Vitek's cross-claim without notice to him. We remanded for a hearing to determine whether Vitek's cross-claim was, in fact, rendered moot by the parties' settlement.
 {¶ 4} On remand, Laneve filed a motion for summary judgment, and Vitek filed a response. The trial court granted summary judgment on the cross-claim in favor of Laneve. Vitek again appeals, claiming that he did not get the hearing required by our remand and that summary judgment was inappropriate.
 {¶ 5} Vitek raises two assignments of error, which we will address in the order that facilitates our discussion.
 {¶ 6} II. "THE COURT OF APPEALS ORDERED THE TRIAL COURT TO HOLD A HEARING AS TO THE CROSSCLAIM TO DETERMINE WHETHER VITEK'S CROSSCLAIM AGAINST LANEVE WAS RENDERED MOOT BY THE PARTIES' AGREEMENT. INSTEAD THE TRIAL COURT ENTERTAINED A MOTION FOR SUMMARY JUDGMENT AND ONE YEAR LATER GRANTED SUMMARY JUDGMENT DISMISSING THE CROSSCLAIM. THE SUMMARY JUDGMENT WAS GRANTED IN ERROR."
 {¶ 7} Under this assignment of error, Vitek claims that the trial court did not comply with our remand and did not give him his "day in court" because it decided the cross-claim on a motion for summary judgment rather than conducting a hearing. Vitek apparently defines a hearing as an oral hearing at which the parties present evidence.
 {¶ 8} We disagree with Vitek's assertion that he did not have his "day in court." Although it is true that the court did not conduct an oral hearing at which the parties could have presented evidence regarding the cross-claim, the trial court may exercise its discretion to determine whether an oral or non-oral hearing is necessary. See Bitzer v. Lincoln Elec. Co. (1990),67 Ohio App.3d 53, 59, 585 N.E.2d 978, citing Laverick v. Children'sHosp. Medical Ctr. of Akron (1988), 43 Ohio App.3d 201,540 N.E.2d 305; Arkwright Mut. Ins. v. Toler, Hamilton App. No. C-020589, 2003-Ohio-2202, ¶ 22. The non-oral hearing that the trial court conducted in response to Laneve's summary judgment motion was sufficient to satisfy the requirement of our remand and to determine whether the issues raised by the cross-claim were moot.
 {¶ 9} The second assignment of error is overruled.
 {¶ 10} I. "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING VITEK'S CROSSCLAIM AGAINST LANEVE."
 {¶ 11} In granting summary judgment, the trial court relied on a report filed by Laneve which showed an operating loss for DRAS and noted its prior finding that DRAS was not a viable entity. The court also relied on Vitek's testimony that he did not know whether the company had made any money in 1999, 2000, or 2001. The court faulted Vitek for failing to provide "any
specific facts to the effect that the company did, would or could make any money" (emphasis sic) and characterized Vitek's affidavit as self-serving. Based on Vitek's inability to show evidence of a profit and on Laneve's assumption of $60,000 in debt from the company, the court concluded that Vitek could not claim any damages from Laneve's handling of the company.
 {¶ 12} Laneve offered his own affidavit in support of his motion for summary judgment. In the affidavit, he stated that he had contributed all of the money to DRAS thorugh personal loans or bank loans that he guaranteed. He stated that Vitek never put any money into the corporation and never paid for his membership stock in accordance with the operating agreement. He asserted that Vitek had performed his duties to the company ineffectively and had been "terminated" from employment as a result. The affidavit concluded: "I am unaware of any facts that would have caused damages to the business or to Mr. Vitek as a minority member in this company by my activities. No activities, which I have performed, could be construed as misrepresentations or fraudulent to the rights of minority member Frank Vitek."
 {¶ 13} In response, Vitek claimed by affidavit that he had spent "countless hours" building the business and that he had made in-kind contributions such as software and computer products. He claimed that, "[i]f one eliminates questionable expenses that Laneve paid to himself, in terms of dues, interest, legal expenses for this lawsuit, rent, and labor for his own employees, plus his dental practice utility expenses, the limited liability company would have had a net income, not a loss." Vitek asserted that Laneve breached his fiduciary duty by concealing information about the company and refusing to allow Vitek to participate in decision-making. Vitek contended that this breach of fiduciary duty was "separate and apart from any distribution of assets," and that his cross-claim therefore was not rendered moot by the settlement agreement regarding dissolution of the company.
 {¶ 14} The trial court also had before it the depositions of the two men. In Laneve's deposition, he acknowledged that DRAS had leased space from his dental practice as opposed to leasing from a third party and that the two entities had shared an employee. He also admitted that he had not obtained Vitek's prior written approval for business loans, in violation of the terms of the operating agreement, although he maintained that Vitek had known about the loans and had agreed to them. Laneve clearly felt that, because he was the majority member, he could handle financial matters as he saw fit without consultation with Vitek. Finally, Laneve admitted starting Direct Reimbursement LTD, a second limited liability company which offered the same services as DRAS, in 2002. Laneve transferred equipment and customers from DRAS to Direct Reimbursement. Vitek also started another limited liability company to allow him to continue in the business. Vitek claimed that he had not been allowed access to any financial information about the operations of DRAS, and that he had not even been aware that an employee had been hired prior to the lawsuit.
 {¶ 15} The trial court erred in granting summary judgment on Vitek's cross-claim based on the evidence presented. As a preliminary matter, we note that Vitek's affidavit was no more self-serving that Laneve's. More significantly, Laneve admitted in his deposition to several violations of the company's operating agreement. He also maintained that he had the authority to "fire" Vitek and to make decisions unilaterally — and had done so — because he was the majority member. Both of these assertions raise questions of fact when one considers Vitek's ownership interest and the parties' choice of entity. Furthermore, Laneve admitted that he transferred all of the assets and customer lists from DRAS to the newly formed LLC in which he had the sole interest. These facts, along with Vitek's assertions that questionable expenditures had turned a potential profit into a loss and that Laneve had engaged in self-dealing by paying expenses of his dental practice through DRAS, raise a genuine issue of material fact as to whether Laneve had breached his fiduciary duty to Vitek, and whether Vitek had sustained damages in excess of the company debt assumed by Laneve.
 {¶ 16} The first assignment of error is sustained.
 {¶ 17} The judgment of the trial court is reversed, and the matter is remanded for further proceedings.
Wolff, J. and Grady, J., concur.